**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF WISCONSIN**
_____

**BRAEGER CHEVROLET, INC. et al.,**
    **Plaintiffs,**

v.                     **Case No. 14-cv-1308**

**ALLY FINANCIAL, INC.,**
    **Defendant.**
_____

## DECISION AND ORDER

Plaintiffs, a Milwaukee car dealership and its affiliated entities, bring this case against their former lender, Ally Financial, alleging breach of contract and economic duress. Before me now is defendant's motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6).

### I. Background

Plaintiffs financed the majority of their car dealership operation with defendant. Their financing agreements included: (1) a "floor plan" loan, through which plaintiffs financed their inventory of vehicles; (2) several real estate loans, which required plaintiffs to pay prepayment penalties for early repayment; (3) a revolving line of credit agreement; and (4) a commercial lending agreement, which was a single advance loan. The parties also signed a cross default agreement, which provided that a default on any one of plaintiffs' loans would constitute a default on all of their loans, allowing defendant to raise plaintiffs' interest rates. According to plaintiffs, this type of multi-loan, cross-collateralized agreement is common in the car dealership industry.

The parties refinanced in 2011, but in 2012, plaintiffs allege that defendant determined "that it wanted Braeger to leave the bank" and that defendant, with the intent

to force plaintiffs to refinance their loans early with another bank, took an escalating series of actions which harassed and put increasing pressure on plaintiffs to leave the bank. Am. Compl. at 7 (ECF No. 7). Specifically, plaintiffs allege that defendant: insisted plaintiffs leave the bank; insisted that plaintiffs infuse more cash into their operations; froze plaintiffs' line of credit; demanded that plaintiffs pay down their credit line and begin making monthly payments; limited the number of cars plaintiffs could finance through the floor plan loan at one time; insisted that plaintiffs keep cars financed by defendant in certain locations; artificially depressed plaintiffs' loan to value ratio; refused to renew an inter-creditor agreement with another one of plaintiffs' lenders; insisted plaintiffs pay off vehicles under the floor plan loan within three days of sale; increased audits of plaintiffs; insisted plaintiffs provide copies of vehicle titles; demanded that plaintiffs restructure the sale of a piece of real estate; charged plaintiffs curtailments; and threatened to declare plaintiffs in default and to raise interest rates on all loans if they did not comply with other demands. In January 2013, plaintiffs did refinance with another bank, and were required to pay defendant $251,288.94 in prepayment penalties because they refinanced their real estate loans early.

## II. Discussion

To survive defendant's motion to dismiss, plaintiffs' complaint must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). I accept the complaint's factual allegations as true, but allegations in the form of legal conclusions are insufficient. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Plaintiffs first allege that defendant breached its duty of good faith and fair dealing under the contracts. Defendant argues I should dismiss this claim because all of the

2

actions plaintiffs allege defendant took were authorized by the parties' contracts. Under Wisconsin law,[1] every contract includes an implied covenant of good faith and fair dealing. *Chayka v. Santini*, 47 Wis. 2d 102, 107 n.7 (1970). The duty of good faith "emphasizes faithfulness to an agreed common purpose and consistency with the justified expectations of the other party" and excludes bad-faith conduct that "violate[s] community standards of decency, fairness and reasonableness." *Restatement (Second) of Contracts* § 205 cmt. a (1981). A party may violate the covenant of good faith and fair dealing even when it complies in form with the contract if its conduct does not comply with the common purpose of the agreement. *Beidel v. Sideline Software, Inc.*, 348 Wis. 2d 360 (2013) (stating that "following the letter but not the spirit of an agreement . . . [is] deemed a violation of the covenant of good faith and fair dealing"); *Chayka*, 47 Wis. 2d at 107 ("This is a compliance in form, not in substance, that breaches the covenant of good faith that accompanies every contract, by accomplishing exactly what the agreement of the parties sought to prevent."). However, a party does not breach the covenant of good faith by doing something that is explicitly authorized by the agreement. *Super Valu Stores, Inc. v. D-Mart Food Stores, Inc.*, 146 Wis. 2d 568, 577 (Ct. App. 1988).

Defendant argues that plaintiffs have failed to adequately plead a breach of the covenant of good faith because each of the individual actions plaintiffs complain of were explicitly authorized by contract and thus cannot constitute a "bad faith" breach. I disagree for two reasons. First, not all of the individual actions complained about appear to be *explicitly* authorized by the parties' contracts. For example, plaintiffs allege that defendant

---

[1] The parties agree that Wisconsin law applies.

"insist[ed], on several occasions, that Braeger leave the bank," intentionally undervalued plaintiffs' property in order to artificially depress plaintiffs' loan-to-value ratios, and demanded that plaintiffs infuse more cash into their operations, Am. Compl. at 7–9 (ECF No. 7), none of which are explicitly authorized by the contracts.[2]

Second, and more importantly, plaintiffs allege more than mere individual actions; they allege a course of escalating and harassing conduct as well as a bad-faith motive. Assuming this to be true, the parties' contracts do not explicitly authorize such a bad-faith attempt to force plaintiffs into refinancing early to the advantage of defendant. Further, the common purpose of the parties' agreement appears to have been to continue the creditor-lender relationship at least through June 1, 2016, as evidenced by the fact that plaintiffs would be required to pay prepayment penalties if they refinanced before then. The bad-faith intent of forcing plaintiffs to refinance early at their expense and the collective actions taken to effect this intent, as alleged in the complaint, would violate this purpose. Thus, I conclude that plaintiffs have stated a plausible claim for breach of contract.

Plaintiffs also include an economic duress claim in their complaint in which they allege that defendant made threats which forced them to take certain actions in order to protect their business. Defendant argues that I must dismiss this claim because economic

---

[2] Defendant argues that because the parties' revolving line of credit agreement gives it the "sole and absolute discretion[ to] increase, decrease, change, or suspend its obligation to make Advances under the Line of Credit," Am. Compl. Ex. C, at 6 (ECF No. 7-3), it follows that the agreement also allows it to condition its continued lending on certain things, such as requiring plaintiffs to infuse more cash into their operations. While this may not constitute a breach of the contract, it does not necessarily follow that these actions were explicitly authorized by the contract, and defendant points to nothing in the parties' contracts that explicitly authorizes it to condition lending on certain performance, such as the infusion of cash into operations.

duress is not an independent tort claim but merely a defense to enforcement of a contract. Traditionally, economic duress is a contractual defense which allows a party to void a contract when the contract was induced by an improper threat. *Restatement (Second) of Contracts* § 175(1) (1981). In *Wurtz v. Fleischman*, the Wisconsin Court of Appeals stated that economic duress can also be an independent tort action. 89 Wis. 2d 291, 309 (Ct. App. 1979) ("[W]e note that economic duress is not only available as a defense to a suit on a contract, but also may be a separate cause of action."). However, the Wisconsin Supreme Court reversed the court of appeals, *Wurtz v. Fleishman*, 97 Wis. 2d 100 (1980), and it is unclear from its decision whether it left intact the court of appeals' creation of the tortious cause of action for economic duress. In *Wurtz*, economic duress was asserted as a defense to a contract enforcement action, and the supreme court only addressed the doctrine in that context. *Id.* at 102, 110. The Wisconsin Supreme Court has not addressed the issue since, and the question of whether an independent cause of action for economic duress exists in Wisconsin is unsettled. *Compare Mancini v. Mathews*, 306 Wis. 2d 850 (Ct. App. 2007) (unpublished opinion) (concluding that "economic duress is a creature of contract law that allows the victim to rescind a contract [and] is not a tort in and of itself, which would allow for damages"), *with Jakubowski v. Rock Valley Builders*, 209 Wis. 2d 602 (Ct. App. 1997) (unpublished opinion) (referring to "economic duress as a tort").

    In addition to a lack of a clear indication from Wisconsin courts as to whether economic duress can be asserted as an independent tort claim, the authority on which the *Wurtz* court relied in defining economic duress supports the conclusion that the doctrine is limited to a contract defense and does not exist as an independent tort claim. 28

5

*Williston on Contracts* § 71:7 (4th ed.) ("[M]ost jurisdictions apply economic duress . . . as a contractual defense or basis for rescinding contracts."); *id.* § 71:8 ("[E]conomic duress . . . is an affirmative defense to a contract which releases the party signing under duress from all contractual obligations." (quotations and citation omitted)). *See also* 7-28 *Corbin on Contracts* § 28.8 (2014) (stating that "the tort of duress has been recognized only in 'odd cases'"). Given all this, I cannot say that Wisconsin recognizes an independent tort claim for economic duress. *See Verfuerth v. Orion Energy Systems, Inc.*, No. 14-C-352, 2014 WL 5682514, at *9 (E.D. Wis. Nov. 4, 2014) ("[A]bsent some clear guidance from the Wisconsin courts, I could not conclude that economic duress exists as a stand-alone claim in Wisconsin."). Thus, I will dismiss plaintiffs' economic duress claim.

### III. Conclusion

**THEREFORE, IT IS ORDERED** that defendant's motion to dismiss (ECF No. 8) is **GRANTED in part** and **DENIED in part**.

Dated at Milwaukee, Wisconsin, this 2nd day of April, 2015.

s/ Lynn Adelman
_____
LYNN ADELMAN
District Judge